# Exhibit A

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Robert Curry                          :
725 Rhoads Avenue                     :
Jenkintown, PA 19046                  :
                                      :
            Plaintiff,                :
                                      :
    v.                                :
                                      :
United Parcel Service, Inc.           :          NO.: 16-04482
d/b/a UPS                             :
55 Glenlake Parkway                   :
Atlanta, GA 30328                     :
                                      :
        And                           :
                                      :
Teamsters Local 623                   :
4369 Richmond Street                  :
Philadelphia, Pa 19137                :
                                      :                              :
        And                           :
                                      :
John Does 1-10                        :
                                      :
            Defendants.               :

## FIRST AMENDED CIVIL ACTION COMPLAINT

### I.      NATURE OF ACTION

1.     This action arises out of a violation of contracts between an employer and a labor
organization representing employees in an industry affecting commerce, pursuant to 29 U.S.C.A.
§185. *See also Vaca v. Sipes,* 87 S.Ct. 903 (1967).

### II.     JURISDICTION AND VENUE

2.     Jurisdiction in this Honorable Court is based on a violation of federall law conferred by
U.S.C. § 1331.

3.    Venue lies in this district in that the events giving rise to this claim occurred here, at least one Defendant resides, maintains a principal place of business, and/or does business here, and/or the property which is the subject of this action is situated within this district.

4.    This action arises out of a violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce, pursuant to 29 U.S.C.A. §185.

### III.    PARTIES

5.    Plaintiff, Robert Curry, is an adult individual residing at the above-captioned address.

6.    Defendant, United Parcel Service, Inc., doing business as UPS ("UPS"), is a corporation duly organized and existing under and by virtue the laws of the State of Ohio, with an office at the above-captioned address.

7.    Defendant, Teamsters Local 623, is an organization duly organized and existing under and by the virtue of the laws of the Commonwealth of Pennsylvania, with an office at the above-captioned address.

8.    Defendants, John Does 1-10, is a moniker/fictitious name for individuals and entities currently unknown but will be substituted when known, as affiliated, associated or liable hereunder for the reasons set forth below or inferred therefrom.    Each of these parties are incorporated as Defendants in each and every count and averment listed above and below.    Upon information and belief, Defendants, John Does, were agents, servants, workmen, or employees of Co-Defendants, liable to Plaintiff hereunder.

### IV.    OPERATIVE FACTS

9.     On or around July 29, 1996, Plaintiff was hired by Defendant, UPS, and joined the local union, Defendant, Teamsters Local 623. Plaintiff worked part-time until approximately 2002, when Plaintiff became a package driver.

10.    Plaintiff worked at UPS without incident and with positive reviews until in or about 2013.

11.    In or around Winter 2013, UPS's union contract with the Teamsters was approaching expiration. Under negotiation was a divisive change in health care benefits, from an excellent Blue Cross / Blue Shield health insurance plan to a Teamster-managed TeamCare health insurance plan.

12.    Both national and local Teamsters leadership were providing little to no information to their members on the coverage or other details of the proposed Teamster-managed TeamCare health insurance plan.

13.    Plaintiff decided to have a t-shirt made, stating "Vote No" in reference to the membership vote on accepting the new contract with UPS, which included the Teamster-managed TeamCare health insurance plan. The t-shirt was designed on UPS-brown t-shirts with the appropriate-matching yellow wording, stating "Vote NO". Plaintiff began wearing his "Vote No" t-shirt.

14.    The popularity of the t-shirt climbed rapidly. Plaintiff sold the t-shirt to hundreds of co-workers at Teamsters Local 623. In time, Plaintiff joined a Facebook Page, entitled "Vote No on UPS Contract," through which Plaintiff supplied t-shirts to local Teamster unions all over the country.

15.    At about this same time, Plaintiff joined Teamsters for a Democratic Union ("TDU"), a reform union within Teamsters. TDU represents itself as a reform union that provides education and information to Teamster members that the national union leaders will not provide.

16.     During 2013, Plaintiff became a nationally-recognized reform leader. He traveled to conventions, met with numerous members, and even had various articles written about him and his efforts to reform Teamsters.

17.     Plaintiff publically backed Fred Zuckerman, President of Teamsters Local 89 in Louisville, Kentucky for General President of Teamsters in his race against Jimmy Hoffa, Jr., a notorious union leader. In fact, Plaintiff circulated a petition online to replace Hoffa that garnered over 800 signatures.

18.     During Summer 2013, in preparation of the vote on the new contract with UPS, Plaintiff and other members of Teamsters Local 623 camped outside the UPS buildings in Philadelphia while they were not working. Plaintiff personally made "Vote No" signs and banners, which he and the other members displayed outside the UPS buildings in Philadelphia.

19.     At this time, Teamsters Local 623 leadership told members to vote "Yes" in favor of the new contract with UPS.

20.     As a result, an overwhelming 80% of the membership of Teamsters Local 623 voted "No". In fact, eighteen (18) local chapters voted down the new contract across the country, forcing the national Teamsters Union back to the negotiating table.

21.     Following the first successful "No" vote on the national UPS contract, Plaintiff formed a slate of seven (7) individuals to run for leadership of the Teamsters Local 623, with Plaintiff at the top of the ticket. Plaintiff advertised the ticket as "The Integrity Slate".

22.     The Teamsters Union prepared a new vote on the UPS contract, with minimal differences. In preparation of the vote, Teamsters Local 623 leadership asked Hoffa for help. Hoffa sent several International Vice Presidents to Philadelphia to support the local leadership.

23.     Plaintiff and The Integrity Slate again made "Vote No" signs and banners, which he and the other members displayed outside the UPS buildings in Philadelphia. They also handed out fliers, again urging members to "Vote No" with an explanation of the rationale.

24.     In October 2013, an overwhelming 80% of the membership of Teamsters Local 623 again voted "No". In fact, three (3) chapters again voted down the new contract across the country, forcing the national Teamsters Union back to the negotiating table.

25.     Rather than voting a third time, Hoffa and the national Teamsters leadership changed the Constitution of the Teamsters to allow the national leadership to adopt the new contract with UPS without a third vote.

26.     The Integrity Slate, with Plaintiff in the lead, handed out t-shirts, fliers, and novelties to their co-workers in advance of the local leadership election. In fact, Plaintiff even sent campaign mailers to every member of the Teamsters Local 623; in excess of 2,500 members.

27.     Out of 2,500 members, The Integrity Slate lost by only 30 votes. However, Plaintiff was approached by several individuals claiming knowledge of election fraud.

28.     Plaintiff accepted his loss, despite the occurrences of election fraud, and prepared to run again in the 2016 election.

29.     Plaintiff experienced verbal harassment from Teamsters Local 623 leadership and the leadership's friends following the election that was ongoing until his retaliatory termination.

30.     In or around Spring 2014, Plaintiff signed up to be trained as a CDL Class A truck driver. However, despite his nineteen (19) years of seniority, Plaintiff was skipped over by the local leadership.

31.     Plaintiff filed a grievance for being skipped over based on his seniority. As a result, Plaintiff was awarded the training and obtained his CDL Class A truck driver license. Plaintiff began working as a tractor trailer truck driver in or around July 2014.

32.     On or about April 17, 2015, after working eight (8) hours jockeying trailers around the Oregon Ave - Philadelphia UPS yard, Plaintiff was told to drive a trailer (#827629) from the Philadelphia UPS yard to the UPS facility located in Hunt Valley, Maryland. On the return trip, Plaintiff was instructed to drive a trailer (#887978) to Philadelphia.

33.     That evening, during the return trip, Plaintiff stopped at the "Chesapeake House" rest stop on I-95 to use the bathroom. After using the bathroom and splashing water on his face, Plaintiff exited and saw a co-worker, Sam Mendez.

34.     Plaintiff decided to use his ten-minute break to re-charge and talk to Mendez. Sal Falice, another co-worker, also stopped to talk. During the conversation, Mendez provided tips on how to stay awake during the later hours of long trips.

35.     After the ten-minute break, the drivers returned to their trucks. As Plaintiff started up his truck, Mendez ran over and asked for a quarter. Plaintiff tossed Mendez a quarter and drove off. Plaintiff, at no time, knew what Mendez needed the quarter for and assumed generally that he needed the quarter for monetary reasons.

36.     In total, Plaintiff worked approximately thirteen and one-half (13 ½) hours on April 17, 2015. The "Chesapeake House" rest stop occurred during the last two (2) hours of his double-shift.

37.     On or about April 22, 2015, while Plaintiff was working, Plaintiff was called into the office. John Fiorentino, a New Jersey chapter leader, accused Plaintiff of "stealing time" by not clocking out while Plaintiff stopped to use the bathroom on April 17, 2015.

38.     No explanation was provided for why Fiorentino was involved, let alone leading, the accusations as he was not a member of the local Philadelphia union – Teamsters Local 623.

39.     Fiorentino explained that they had a video of Plaintiff stopping at the "Chesapeake House" rest stop. Fiorentino further stated that Plaintiff failed to clock out for his bathroom break.

40.     Fiorentino then questioned Plaintiff concerning the quarter. Plaintiff answered as best as he could remember, but explained that he had worked a thirteen and one-half (13 ½) hour day and could not remember much of the meaningless details.

41.     Fiorentino terminated him at the conclusion of the questioning. (Exhibit A – Termination Letter). Plaintiff was then humiliatingly escorted by guards to the gate in front of many co-workers.

42.     Upon information and belief, UPS is legally not allowed to force Plaintiff to clock out for a bathroom break while he is hauling tractors.

43.     Upon information and belief, Plaintiff appropriately used his ten-minute break.

44.     Plaintiff filed two grievances. Plaintiff filed Grievance #9965 for unjust termination (Exhibit B – Grievance #9965) and Grievance #9966 for constant harassment (Exhibit C – Grievance #9966). Grievance #9966 was never addressed.

45.     On or about May 1, 2015, a hearing was held with regards to Grievance #9965 for unjust termination. The Hearing Panel again stated that Plaintiff had failed to clock-out for his bathroom break.

46.     Plaintiff explained to the Hearing Panel that (a) the UPS IVIS and Timecard systems do not have a procedure or ability to clock out for a bathroom break; and, (b) Plaintiff was recently

trained by two (2) supervisors separately and neither clocked-out during the times they stopped for a bathroom break.

47.    The Hearing Panel asked Plaintiff questions about the quarter, accusing Plaintiff of equipment tampering. Plaintiff learned that Mendez had used the quarter Plaintiff had given him to tamper with Falice's truck's air lines as a prank. Plaintiff emphatically denied any knowledge or involvement with the prank, other than innocently providing Mendez with a quarter when requested.

48.    The Hearing Panel watched a video several times but refused to allow Plaintiff to see it. The Hearing Panel claimed that the video provided proof of Plaintiff's misdeeds.

49.    At the end of the hearing, Plaintiff was again escorted off the premises by guards.

50.    Plaintiff filed six more grievances. (Exhibit D – Additional Grievances). Through the grievances, Plaintiff requested to see the video and claimed that the termination was retaliatory.

51.    As a result of the additional grievances, Plaintiff was shown the video. The video clearly shows Plaintiff take a ten-minute break, from 7:57pm to 8:07pm. It does not show any evidence of Plaintiff tampering with any equipment.

52.    In or around Thursday, May 14, 2015, a letter was sent to Plaintiff advising him that a Committee would hear his grievance/appeal regarding his termination in Asheville, NC on May 19th and 20th. (Exhibit E – Hearing Notice). The letter required Plaintiff to notify the local union if he was going to attend at least five days before the hearing; i.e. the same day the letter was sent.

53.    Plaintiff made arrangements and attended the hearing in North Carolina.

54.    On or about May 19, 2015, Plaintiff attended the hearing. Plaintiff offered a letter from Bill Morris, a local union leader into evidence. (Exhibit F – Morris Letter).

55.     Plaintiff also submitted a notarized statement from Mendez stating that Plaintiff "had nothing to do with the quarter incident." (Exhibit G – Mendez Statement).

56.     Finally, Plaintiff submitted a notarized statement, that Plaintiff made, stating that he had "never been trained by any part of management on how to properly code restroom stops." (Exhibit H – Curry Statement).

57.     Despite the evidence that Plaintiff knew nothing of the quarter prank and was never trained to clock out during restroom breaks, Plaintiff's termination was upheld. (Exhibit I – Termination Decision Letter) ("Termination Decision Letter").

58.     Although the Termination Decision Letter was dated May 20, 2015, Plaintiff did not obtain a copy of the letter for several months and after several attempts to obtain it.

59.     The Termination Decision Letter was signed by Dennie Gandee, on behalf of UPS, and Greg Yerace, on behalf of the Union. Yerace works hand-in-hand with Ken Hall, Hoffa's top lieutenant, at Teamsters Local 175. Upon information and belief, Yerace was instructed to terminate Plaintiff regardless of the evidence.

60.     Additionally, Plaintiff filed a claim with the Pennsylvania Department of Labor & Industry. Plaintiff sought Unemployment Compensation. As a result of the claim, the Department found that there was "insufficient information provided to show that the Claimant committed a dishonest act" and award Plaintiff benefits under the Pennsylvania Unemployment Compensation Law. (Exhibit J – Unemployment Letter).

61.     Upon information and belief, Plaintiff was terminated for his involvement with The Integrity Slate and his campaign to vote down the national UPS contract in clear violation of his Constitutional and statutory rights.

62.     Upon information and belief, several other union members across the country, who ran on reform tickets for top leadership positions of local unions and/or were involved in the Vote No campaign, have also been terminated for dubious reasons in retaliation. For example, cases 06-CA-143062 and 06-CA-146179, are both currently pending before the National Labor Relations Board.

63.     As a result of the aforesaid, Plaintiff suffered significant financial harm and severe emotional distress.

## V.     CAUSES OF ACTION

**COUNT I**
**Breach of Collective Bargaining Agreement / Breach of Duty of Fair Representation / Third-Party Beneficiary**

64.     Plaintiff incorporates by reference all prior paragraphs as if fully set forth at length herein.

65.     At all material times, the Collective Bargaining Agreement entered into between UPS and Teamsters Local 623 was for the intended and direct benefit of the stockholders of UPS and the union members of the Teamsters Local 623; i.e. Plaintiff.

66.     At all times relevant, Plaintiff was employed by Defendants under the Collective Bargaining Agreement.

67.     Defendants made false claims against Plaintiff.

68.     Despite the claims being false and all credible and material facts there supporting, Defendants took adverse action against Plaintiff, namely firing Plaintiff, as a punitive measure and in retribution for the negative nation-wide publicity and the substantially great workload caused by the "Vote No" movement including stress and additional rounds of negotiations.

69.     As described above, Defendants breached the Collective Bargaining Agreement when they fired Plaintiff without proper cause and in retaliation for the negative nation-wide publicity

and the substantially great workload caused by the "Vote No" movement including stress and additional rounds of negotiations.

70.    As a result of Defendants' actions, Plaintiff has sustained damages.

### VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment in his favor and against Defendants, individually, jointly and/or severally, in an amount in excess of $75,000.00, including:

a.    Compensatory, statutory, treble and punitive damages;

b.    Reasonable attorneys' fees, costs and interest; and

c.    Such other and further relief as this Court may deem proper, including injunctive relief.

**WEISBERG LAW**

*/s/ Matthew B. Weisberg*
Matthew B. Weisberg, Esq.
L. Anthony DiJiacomo, III, Esq.
*Attorneys for Plaintiff*

# Exhibit A – Termination Letter



**United Parcel Service**
15 Oregon Avenue
Philadelphia, PA 19148

May 01, 2015

Bob Curry
725 Rhoads Avenue
Jenkintown, PA 19046
Cert.# 7014 3490 0000 7528 4840
Employee # 0471351

Dear Bob,

On Tuesday, April 22. 2015, a meeting was held in the Philadelphia Air Feeder Office. Discussed was your dishonesty, guilty knowledge with regards to equipment tampering, and your failure to follow methods and procedures. Present were: you, Union Steward R. Adkisson, Feeder Manager J. Fiorentino, Security Supervisors K. Murdah and G. Lee, Human Resource Supervisor J. Correa and E. Morrell.

Due to the above named infractions and your overall poor work record, you have given United Parcel Service just cause to discharge you.

This is an Official Discharge Notice as outlined in the current labor agreement between United Parcel Service and I.B.T. Local 623.

Sincerely,
UPS, Inc.

Rich Pacheco
Division Manager

Local# 0623
Cert.# 7014 3490 0000 7528 4857
R. Adkisson
J. Fiorentino
E. Morrell
Center File

# Exhibit B – Grievance #9965



# GRIEVANCE FORM


**TEAMSTERS LOCAL UNION NO. 623**
4369 RICHMOND STREET
PHILADELPHIA, PA 19137
TEL. #215-289-0580 FAX # 215-289-0645

PLEASE PRINT

GRIEVANT _____ EMPLOYER _____

HOME ADD. _____ SENIORITY DATE _____

CITY _____ CLASSIFICATION _____

ZIP _____ HOME PH.# _____ WORK AREA _____

## CONTRACT VIOLATION

DATE OF VIOLATION _____ ARTICLE No. _____ SECTION _____
This grievance is filed under the above article(s) and all applicable articles

DATE GRIEVANCE SUBMITTED _____ SUBMITTED TO (SUPV./MGR.) _____

**NATURE OF GRIEVANCE:**

Unjust Termination

**ADJUSTMENT REQUESTED:** All back pay & benefits
made whole

GRIEVANT _____ STEWARD _____

CENTER LEVEL HEARING DATE _____ DISCUSSED WITH _____

**GRIEVANCE WAS SETTLED WITH UNION STEWARD: YES _____ NO _____**
(Include all additional information on stewards investigation fact sheet when grievance is submitted to local union.)

**GRIEVANCE SETTLEMENT:**

GRIEVANT            UNION REP.            COMPANY            DATE

WHITE - COMPANY COPY    YELLOW - UNION COPY    PINK - STEWARD COPY    GOLDENROD - GRIEVANT COPY

# Exhibit C – Grievance #9966



# GRIEVANCE FORM

TEAMSTERS LOCAL UNION NO. 623
4369 RICHMOND STREET
PHILADELPHIA, PA 19137
TEL. #215-289-0580 FAX # 215-289-0645

**PLEASE PRINT**

GRIEVANT _____ EMPLOYER _____

HOME ADD. _____ SENIORITY DATE _____

CITY _____ CLASSIFICATION _____

ZIP _____ HOME PH.# _____ WORK AREA _____

## CONTRACT VIOLATION

DATE OF VIOLATION _____ ARTICLE No. _____ SECTION _____

This grievance is filed under the above article(s) and all applicable articles

DATE GRIEVANCE SUBMITTED _____ SUBMITTED TO (SUPV/MGR.) _____

NATURE OF GRIEVANCE: _____

_____

_____

_____

_____

_____

_____

ADJUSTMENT REQUESTED: _____

_____

_____

GRIEVANT _____ STEWARD _____

CENTER LEVEL HEARING DATE _____ DISCUSSED WITH _____

**GRIEVANCE WAS SETTLED WITH UNION STEWARD: YES _____ NO _____**
(Include all additional information on stewards investigation fact sheet when grievance is submitted to local union.)

**GRIEVANCE SETTLEMENT:** _____

_____

_____

_____

_____

GRIEVANT _____ UNION REP. _____ COMPANY _____ DATE _____

WHITE - COMPANY COPY    YELLOW - UNION COPY    PINK - STEWARD COPY    GOLDENROD - GRIEVANT COPY



# Exhibit D – Additional Grievances



# GRIEVANCE FORM

**№ 0952**

TEAMSTERS LOCAL UNION NO. 623
389 RICHMOND STREET
PHILADELPHIA, PA 19137
TEL. #215-289-0580 FAX # 215-289-0645

**PLEASE PRINT**

GRIEVANT **Robert Curry**     EMPLOYER **UPS**

HOME ADD **725 Rhords Ave**     SERIORITY DATE **7/29/96**

CITY **Jenkintown**     CLASSIFICATION **Facters**

ZIP **19046**     HOME PH # **215 738 7710**     WORK AREA

## CONTRACT VIOLATION

DATE OF VIOLATION **5/1/15**     ARTICLE No. **37**     SECTION

This grievance is filed under the above articles and all applicable articles

DATE GRIEVANCE SUBMITTED **5/5/15**     SUBMITTED TO SUPERVISOR **C.9Totn? 7044**

NATURE OF GRIEVANCE:

IN my hearing on 5/1/15 I made numerous
requests to see video about equipment
tampering, management and union president
union steward claim to have watched its

It is my belief that there is no video and
I'm being subjected to dishonesty.

ADJUSTMENT REQUESTED:

① To see video of alleged equipment tampering
that I have accused of guilty knowledge.

② Honesty by management all all times.

GRIEVANT **Rob C**     STEWARD

---

CENTER LEVEL HEARING DATE     DISCUSSED WITH

GRIEVANCE WAS SETTLED WITH UNION STEWARD: YES ___ NO ___
(Include all additional information on stewards investigation fact sheet when grievance is submitted to local union.)

GRIEVANCE SETTLEMENT

# GRIEVANCE FORM

Nº 9353

TEAMSTERS LOCAL UNION NO. 623
4369 RICHMOND STREET
PHILADELPHIA, PA 19137
TEL. #215-289-0580 FAX # 215-289-0645

PLEASE PRINT

GRIEVANT Robert Curry    EMPLOYER UPS

HOME ADD 725 Rhodes Ave    SENIORITY DATE 7/2/96

CITY Jenkintown    CLASSIFICATION Feeders

ZIP 19046    HOME PH # 215 738 7710    WORK AREA

## CONTRACT VIOLATION

ARTICLE No. 37    SECTION

DATE OF VIOLATION 5/1/15

This grievance is filed under the above article(s) and all applicable articles

DATE GRIEVANCE SUBMITTED 5/5/15    SUBMITTED TO (STEWARD)

NATURE OF GRIEVANCE: At my center level hearing my discipline my EX manager returns to hand out discipline to myself. I feel this practice is retaliation over ① my grievance filed just to get into feeders ② my grievance which stopped my termination in Feb. ③ Running for Union office

ASSIGNMENT REQUESTED: transfer to step by ① retaliation

All management ② my current manager to handle

GRIEVANT

STEWARD

CENTER LEVEL HEARING DATE    DISCUSSED WITH

GRIEVANCE WAS SETTLED WITH UNION STEWARD: YES _____ NO _____

(Include all additional information on steward, in used police that about when grievance submitted in first name.)

GRIEVANCE SETTLEMENT:



# GRIEVANCE FORM

No. 0954

LOCAL UNION NO. 023
STREET
64177
289-0645

GRIEVANT Robert _____

HOME ADD 725 Rich 3rd Ave                SEVERANCE DATE 7/29/9c

CITY I.T.k                                

ZIP 12_____                275 938 71 _____

DATE OF VIOLATION 5/1/15                              SECTION 2

DATE GRIEVANCE INITIATED _____

_____

_____

_____

_____

_____

_____

_____

GRIEVANT _____

REMEDY REQUESTED _____

GRIEVANCE HAS BEEN SETTLED, AND THE UNION STEWARD AT _____

GRIEVANCE SETTLEMENT _____



# GRIEVANCE FORM



TEAMSTERS LOCAL UNION NO. 623
4289 RICHMOND STREET
PHILADELPHIA, PA 19137
TEL. #215-289-0680 FAX # 215-289-0645

Nº 9955

**PLEASE PRINT**

GRIEVANT Robert Curry     EMPLOYER UPS

HOME ADD. 723 Rhoads Ave     SENIORITY DATE 7/29/96

CITY Jenkintown PA.     CLASSIFICATION

ZIP 19046     HOME PH #     WORK AREA

## CONTRACT VIOLATION

DATE OF VIOLATION 5/1/15     ARTICLE No. 37     SECTION

This grievance is filed under the above article(s) and all applicable articles.

DATE GRIEVANCE SUBMITTED 5/5/15     SUBMITTED TO (Supervisor) _____

NATURE OF GRIEVANCE In hearing on 5/1/15 I was accused
if having " guilty knowledge of equipment damage
I have nothing to do with the equipment damage
I have demanded to see the video but
management has refused to show it.

ADJUSTMENT REQUESTED Harassment by management to cease
Be treated with dignity and respect by all

GRIEVANT _____     STEWARD _____

CENTER LEVEL HEARING DATE _____     DISCUSSED WITH _____

GRIEVANCE WAS SETTLED WITH UNION STEWARD:   YES ____   NO ____
(Include all additional information or forward investigation fact sheet when grievance is submitted to next meeting)

GRIEVANCE SETTLEMENT:



# GRIEVANCE FORM

Nº 9956

TEAMSTERS LOCAL UNION NO. 623
4369 RICHMOND STREET
PHILADELPHIA, PA 19137
TEL. #215-289-9580 FAX # 215-289-0645

**PLEASE PRINT**

GRIEVANT Robert Curry           EMPLOYER UPS

HOME ADD 725 Rhoers Ave         SENIORITY DATE 7/__/0_

CITY Jenkintown                 CLASSIFICATION Feeder

ZIP 19046   HOME PH # 215 732 7316   WORK AREA

## CONTRACT VIOLATION

DATE OF VIOLATION 5/1        ARTICLE No. 37    SECTION

This grievance is filed under the above article(s) and all applicable articles.

DATE GRIEVANCE SUBMITTED 5/5/15    SUBMITTED TO (GRIEVANCE) _____ 2ndre

NATURE OF GRIEVANCE in Kensington on 5/1/15 I was

Accused of not following company/article new
procedure by not going on Break to use the
restroom.
John Liew claim that I was to go on break and
when I come back to fill out an Lot slip to have
the other's employees following doing _____
The Better is Notusing the his ever heard of this
in my failure who like us we did not know de for
ADJUSTMENT REQUESTED:
1 All _____ made ____ of this proceedur
2 stop _____ by _____ the rel

GRIEVANT _____ Curry        STEWARD _____

CENTER LEVEL HEARING DATE _____    DISCUSSED WITH _____

GRIEVANCE WAS SETTLED WITH UNION STEWARD   YES _____   NO _____
(Include all additional information on stewards investigation fact sheet when grievance is submitted to local union)

GRIEVANCE SETTLEMENT:

# GRIEVANCE FORM



NR 0057

TEAMSTERS LOCAL UNION NO. 623
4369 RICHMOND STREET
PHILADELPHIA, PA 19137
TEL. #215-289-0580 FAX # 215-289-0645

PLEASE PRINT

GRIEVANT Robert Cur____     EMPLOYER UPS

HOME ADD. 725 Ekow___ ave___     SENIORITY DATE 7/29/9__

CITY J. okistown PA     CLASSIFICATION Feed__

ZIP 19446     HOME PH #215 _____     WORK AREA

## CONTRACT VIOLATION

DATE OF VIOLATION 5/1     ARTICLE No. 37     SECTION

This grievance is filed under the above article(s) and all applicable article(s)

DATE GRIEVANCE SUBMITTED 5/5/15     SUBMITTED TO (manager) Catharo____

NATURE OF GRIEVANCE On 5/1 in my _____ brought up
the fact that I feel hor____ plea__ of the
fact that he repeats an excess to me. That I
Contin____ asked a__ to. I am onbound know that
by this action I have while these rights which I
____ ____ me for retaliation

ADJUSTMENT REQUESTED Harassment to stop. To be Treated
with dignity and respect by all management

GRIEVANT _____     STEWARD _____

CENTER LEVEL HEARING DATE     DISCUSSED WITH

GRIEVANCE WAS SETTLED WITH UNION STEWARD: YES _____ NO _____
(Include all additional information on stewards investigation sheet when grievance is submitted to local union.)

GRIEVANCE SETTLEMENT:

# Exhibit E – Hearing Notice



# *TEAMSTERS LOCAL UNION NO. 623*

### UNITED PARCEL SERVICE AND TRUCK DRIVERS
4369 RICHMOND STREET • PHILADELPHIA, PA 19137 • (215) 289-0580 • FAX: (215) 289-0645

*Affiliated with International Brotherhood of Teamsters*
*and Teamsters Joint Council No. 53*

**OFFICE OF**
**WILLIAM MORRIS**
*President*
*& Business Agent*

May 14, 2015

Robert Curry
6532 Cottage Street
Philadelphia, PA 19135

Dear Robert:

This is to advise you that your grievance has been filed with the Atlantic Area Parcel Grievance Committee, which meets on May 19th & May 20th, 2015 at the Hilton-Asheville Biltmore Park, 43 Town Square Boulevard, Asheville, NC 28803 (866) 407-5713.

Grievance Filed: Discharge of Robert Curry

If you desire to be present at this meeting, please make the necessary arrangements so that you will be able to attend. Travel and lodging accommodations are the sole responsibility of the member.

If you are going to attend, please notify the Local Union at least five (5) days prior to the date of the meeting.

Fraternally,

WILLIAM MORRIS
Business Agent

WM/pam
HAND DELIVERED

# Exhibit F – Morris Letter



# TEAMSTERS LOCAL UNION NO. 623

### UNITED PARCEL SERVICE AND TRUCK DRIVERS

4369 RICHMOND STREET • PHILADELPHIA, PA 19137 • (215) 289-0580 • FAX: (215) 289-0645

*Affiliated with International Brotherhood of Teamsters
and Teamsters Joint Council No. 53*

OFFICE OF
WILLIAM MORRIS
*President
& Business Agent*

AAPGC
Case # 162-15
Grievant: Robert Curry

To the Committee:

Bob Curry is a full-time tractor trailer driver with a 7/96 seniority date. By letter dated May 1, 2015 Bob was discharged.

Exhibit 1 (Discharge letter)

As a result of this discharge a grievance was filed.

Exhibit 2 (Grievance #9965)

To make a long story short, on April 17 three feeder drivers are in a rest area at the same time and one of them pulls a prank on the other, which blocked his air line and prevented him from moving. And as a result of this Bob Curry, who had nothing to do with this prank, was discharged.

The facts which bring us here today can best be explained by Bob Curry.

Exhibit 3 (Statement)

There are three parts to this discharge that the Company is claiming in their discharge letter. The Company is of the belief that Bob was dishonest in his interview when he couldn't answer questions as precise and accurate as they would have liked. There was no benefit for him to be dishonest because he did nothing wrong.

The letter also states that he had guilty knowledge of equipment tampering, as he has stated, he gave a quarter to a coworker (which was used as a prank to block the air line of the third drivers trailer) but he had no knowledge of what was being done nor did he ask. The Company would like for you to believe that if you give a feeder driver a quarter you should know that he will use it to block an air line. I have driven and been involved with feeders for 25

Year's and I never heard of this quarter trick until now, and I don't believe that Bob, who has been doing this job for less than a year, knew either.

The letter further states that he failed to follow methods and procedures in regards to recording a restroom stop. He explained that he didn't know how to record a restroom stop that was outside of his lunch or 10 minute break nor did he know that he was required to. He explained that during his training with two different supervisors that he would make a stop and and go to a restroom or grab a refreshment and never entered that information. However, where he did make a mistake was when he failed to enter his 10 minute break while he was at the rest area on this day.

In summary, the Company is upset that this prank happened and has discharged two drivers. There is no dispute of the facts involving the prankster who has admitted his actions and has told them that he acted alone. But the Union is perplexed as to why we are here with the discharge of Bob Curry. We could simplify it by saying "wrong place wrong time" but the Company has attempted to justify this discharge with the piling on of minor or unproven charges.

Based on the facts presented we respectfully request that the grievance be sustained and that Bob Curry be returned to work with all lost wages and benefits.


Respectfully submitted,


Bill Morris


**United Parcel Service**
15 Oregon Avenue
Philadelphia, PA 19148

RECEIVED MAY 04 2015                May 01, 2015

Bob Curry
725 Rhoads Avenue
Jenkintown, PA 19046
Cert.# 7014 3490 0000 7528 4840
Employee # 0471351

Dear Bob,

On Tuesday, April 22, 2015, a meeting was held in the Philadelphia Air Feeder Office. Discussed was your dishonesty, guilty knowledge with regards to equipment tampering, and your failure to follow methods and procedures. Present were: you, Union Steward R. Adkisson, Feeder Manager J. Fiorentino, Security Supervisors K. Murdah and G. Lee, Human Resource Supervisor J. Correa and E. Morrell.

Due to the above named infractions and your overall poor work record, you have given United Parcel Service just cause to discharge you.

This is an Official Discharge Notice as outlined in the current labor agreement between United Parcel Service and I.B.T. Local 623.

Sincerely,
UPS, Inc.

Rich Pacheco
Division Manager

Local# 0623
Cert.# 7014 3490 0000 7528 4857
R. Adkisson
J. Fiorentino
E. Morrell
Center File

# GRIEVANCE FORM



N° 9995

TEAMSTERS LOCAL UNION NO. 623
4369 RICHMOND STREET
PHILADELPHIA, PA 19137
TEL. #215-289-0580 FAX # 215-289-0645

PLEASE PRINT

GRIEVANT _Robert C. Raw_  EMPLOYER _UPS_

HOME ADD. _735 Rhoads Ave_  SENIORITY DATE _7/96_

CITY _Jenkintown_  CLASSIFICATION _Feeder_

ZIP _19046_  HOME PH.# _215 738 7710_ WORK AREA _1949_

## CONTRACT VIOLATION

DATE OF VIOLATION _4/22_  ARTICLE No. _7, 51_  SECTION _____
This grievance is filed under the above article(s) and all applicable articles

DATE GRIEVANCE SUBMITTED _4/23/___  SUBMITTED TO (SUPV./MGR.) _____

NATURE OF GRIEVANCE:

Unjust termination

ADJUSTMENT REQUESTED: All back pay Benefits and Seniority

GRIEVANT _____  STEWARD _____

CENTER LEVEL HEARING DATE _____  DISCUSSED WITH _____

**GRIEVANCE WAS SETTLED WITH UNION STEWARD: YES _____ NO _____**
(Include all additional information on stewards investigation fact sheet when grievance is submitted to local union.)

GRIEVANCE SETTLEMENT: _____

GRIEVANT          UNION REP.          COMPANY          DATE

**WHITE - COMPANY COPY     YELLOW - UNION COPY     PINK - STEWARD COPY     GOLDENROD - GRIEVANT COPY**

My name is Robert Curry

I have been employed by UPS since 1996. I started out as an Air walker in downtown Philadelphia. I then moved on to be a PT Air driver. I then went on to be a FT package driver. Then I had an opportunity to bid on and take an Article 22.3 job where I worked on the building shift and delivered early am's. I then had the opportunity of obtaining my CDL last summer and get qualified to be a feeder driver. I have only been in the feeder department of less than a year.

On April 17th I did my bidded job (yard shifting) and at the end of the night I was notified that I was needed to take a load down to Hunt Valley, MD. I took the load and it arrived safely in MD. On the way back I felt the need to use the restroom, and I was feeling tired. This day I worked almost 13 hours I stopped at a rest stop to use the bathroom and splash water on my face to freshen myself up. As I walked out of the bathroom I saw a coworker. I walked out with him and checked my phone for the time and decided to use my 10 minute paid break. I talked and reenergized myself during this break. A third worker arrived and talked with us for a few minutes. Safety is important to me. Before 10 minutes I go back to my tractor and get ready to leave. My coworker came towards my truck and asked for a quarter. I flipped a quarter out the window and made my trip back to the Phila Air Hub.

I finished my day and clocked out. On Wednesday April 22 I was pulled off my job half way through it and was called into the office. I was questioned on a number of specifics, including whether I took my break that night, and I couldn't remember every small detail after working such a long overnight shift. I was terminated for "stealing time". It was later changed to "dishonesty, guilty knowledge with equipment tampering and failure to follow methods and procedures". I have filed a grievance for unjust termination. I have also filed for Harassment.

I believe I have proven my innocence in all of the above counts.

Robert Curry

# Exhibit G – Mendez Statement

Sam Mendez
3228 Saxon Pl
Phila. PA 19114

To whom it may concern:

Robert Curry had nothing to
do with the quarter incident
on Saturday April 18th.

*(signature)* Samuel Mendez    5/18/15

*(signature)* Robert Curry    5/18/15

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
David Kozak, Notary Public
City of Philadelphia, Philadelphia County
My commission expires August 20, 2017
*(notary signature)* 05-18-2015

# Exhibit H – Curry Statement

Robert Curry
725 Rhoads Ave
Jenkintown PA 19046


I, Robert Curry,
have never been trained by any part of
management on how to properly code out
a restroom stop.



Rob Liss

State of Pennsylvania
County of Montgomery

Signed and sworn before me by Robert Curry, this
18th day of May, 2015.

Meghan J Kenney
Notary Public

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
MEGHAN J KENNEY
Notary Public
ABINGTON TWP., MONTGOMERY COUNTY
My Commission Expires Dec 12, 2016

# Exhibit I – Termination Decision Letter

## Atlantic Area Parcel Grievance Committee

Established in accordance with the terms and conditions of the Atlantic Area Parcel Agreement, entered into by and between the several Local Unions and United Parcel Service, Inc.

Docket No. 162-15

IN THE MATTER OF THE DISPUTE BETWEEN

Teamsters Local # 623  (Philadelphia, PA)

**SUBMISSION**

and

UNITED PARCEL SERVICE, INC.

We, the undersigned, parties to the Atlantic Area Parcel Agreement, hereby agree to submit the following dispute for a decision under the Rules of Procedure prescribed by the Atlantic Area Parcel Grievance Committee, by virtue of its authority, as set forth in Article 48 of the Atlantic Area Parcel Agreement.

**Discharge of Robert Curry**

We the undersigned further agree that a majority decision of the Joint Committee in the above dispute will be final, conclusive and binding with no appeal and, further, that neither party will attempt through any overt acts, to void the decision rendered.

The undersigned also agree that failure to comply with the decision of a majority of the Committee within ten (10) days of the date of the decision will result in the loss of all contract rights privileges and benefits due them under Article 48 of the Atlantic Area Parcel Agreement.

Date: _____5/20/2015_____

Employer: United Parcel Service, Inc.

Signed: _____Mike Clayton_____

Title: _____Labor Manager_____

Local No: _____623_____

Signed: _____Bill Morris_____

Title: _____President_____

## DECISION
### PLEASE PRINT

Based on the facts presented and the grievant's own testimony, the grievance is denied.

_____Dennie Gandee_____

**Employer Co-Secretary**

_____5/20/2015_____
Date

_____Greg Yerace_____

**Union Co-Secretary**

_____5/20/2015_____
Date

Form T-102

Exhibit J – Unemployment Letter

# NOTICE OF DETERMINATION



**pennsylvania**
DEPARTMENT OF LABOR & INDUSTRY
OFFICE OF UNEMPLOYMENT COMPENSATION BENEFITS

The final day to file a timely appeal this determination is May 22,2015.

| | |
|---|---|
| SSN: | |
| Type Claim: | UC |
| AB Date: | February 15,2015 |
| Mailed On: | May 07,2015 |
| Page: | 1 of 3 |

**CLAIMANT:**

ROBERT S. CURRY
725 RHOADS AVE
JENKINTOWN PA 19046

**EMPLOYER:**

UNITED PARCEL SERVICE
PO BOX 182366
COLUMBUS OH 43218-2366

## FINDINGS OF FACT

1. The Claimant was last employed on 4/22/2015.
2. The Claimant was discharged for alleged dishonesty.
3. There was insufficient information provided to show that the Claimant committed a dishonest act.

## DISCUSSION

In situations where a Claimant is discharged as a result of the Claimant's alleged dishonesty, the burden is on the Employer to show that the Claimant committed a dishonest act. Once this is established, the burden shifts to the Claimant to show good cause for his actions.

In this case, the Claimant denied committing a dishonest act and the Employer did not provide sufficient information to show that the Claimant committed a dishonest act. As such, the Employer has not sustained its burden of proof and benefits are allowed under Section 402(e).

## DETERMINATION

The Claimant is eligible for benefits under Section 402(e) of the Pennsylvania Unemployment Compensation Law beginning with waiting week ending 4/25/2015.

UC Representative: **L. Hankerson**

## APPEAL INSTRUCTIONS

The last day to appeal this determination is: May 22,2015.

Under Section 501(e) of the Pennsylvania Unemployment Compensation Law, this determination becomes final unless you file an appeal. You have 15 calendar days after the mailing date on the determination to file a timely appeal. However, if the 15th day is a Saturday, Sunday or legal holiday, you may file a timely appeal on the next business day. If your appeal is not filed on time, the UC Board of Review will determine if you had good cause for filing a late appeal.

Your appeal must include the claimant's name; address; Social Security number; the date of the determination being appealed (if known); the reason for the appeal; and the name and address of the individual filing the appeal.

The last day to appeal this determination is: May 22,2015

If you disagree with this determination, you may appeal. If you want to file an appeal, you must do so on or before the date shown above. Information for filing an appeal is included in this determination.